Timothy M. Bechtold
**BECHTOLD LAW FIRM, PLLC**
PO Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Rebecca K. Smith
**Public Interest Defense Center, P.C.**
PO Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| SAVE THE BULL TROUT and ALLIANCE FOR THE WILD ROCKIES, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. DEPARTMENT OF THE INTERIOR, and WEST SIDE DITCH COMPANY <br><br> Defendants. | **COMPLAINT** |

1. This is a challenge to the U.S. Department of the Interior's and West Side Ditch Company's ongoing, unpermitted incidental take of bull trout each year via entrainment and inducement of suboptimal

   instream flow on the section of the Upper Clark Fork River that abuts the Grant-Kohrs National Historic Site and on the West Side Ditch.

2. Plaintiffs here request that the Court declare that the U.S. Department of the Interior and West Side Ditch Company's allowance of unpermitted incidental take of bull trout violates Sections 7, 9, and 10 of the Endangered Species Act.

## I. JURISDICTION

3. This action arises under the laws of the United States and involves the United States as a Defendant. Therefore, this Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. §§ 1331, 1346.

4. An actual controversy exists between Plaintiffs and Defendants. Plaintiffs' members have been at the forefront of bull trout conservation for decades, and have fought against all odds, including immense political pressure and the vast resources of the federal government, to ensure the survival and recovery of bull trout under the Endangered Species Act. Plaintiff's members use and enjoy the area affected by the operations of Grant-Kohrs Ranch National Historic Site and the West Side Ditch for hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other

vocational, scientific, spiritual, and recreational activities. Plaintiffs' members intend to continue to use and enjoy the area frequently and on an ongoing basis in the future.

5. The aesthetic, recreational, scientific, spiritual, and educational interests of Plaintiffs' members have been and will be adversely affected and irreparably injured if Defendants' fail to comply with the law. These are actual, concrete injuries caused by Defendants' failure to comply with mandatory duties under the ESA. The requested relief would redress these injuries, and this Court has the authority to grant Plaintiffs' requested relief under 28 U.S.C. §§ 2201 & 2202, and 16 U.S.C. § 1540(g).

6. Plaintiffs sent Defendants a 60-Day Notice of Intent to Sue for violations of the ESA, and that 60-day notice period has expired. Thus, this Court has jurisdiction to review Plaintiffs' claims.

## II.   VENUE

7. Venue in this case is proper under 28 U.S.C. § 1391(e) and Local Rule 3.2. The area at issue in this case— the Grant-Kohrs Ranch National Historic Site and the West Side Ditch—falls within Powell County, which is within the Butte Division of the United States District Court for the District of Montana.

## III.   PARTIES

8. Save the Bull Trout is a non-profit public interest organization dedicated to ensuring the survival and recovery of bull trout. Its registered office is located in Missoula, Montana.

9. Alliance for the Wild Rockies is a tax-exempt, public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Montana. Members of the Alliance work as fishing guides, outfitters, and researchers, who observe, enjoy, and appreciate Montana's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future. Alliance's members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect bull trout from unpermitted take under the ESA. Alliance for the Wild Rockies brings this action on its own behalf and on behalf of its adversely affected members.

10. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is an administrative agency of the United States government.

11. Defendant WEST SIDE DITCH COMPANY is a private irrigation company based in Deer Lodge, Montana.

## IV.    FACTUAL ALLEGATIONS

12. The U.S. Department of the Interior (DOI) operates the Grant-Kohrs Ranch National Historic Site (GKR) in Deer Lodge, Montana. Three miles of the GKR abut the Upper Clark Fork River (UCF).

13. Congress established the GKR as a national historic site in 1972 to commemorate the frontier cattle era of U.S. history, preserve the centuries-old Grant-Kohrs Ranch, and interpret those nationally significant values for the benefit and inspiration of present and future generations.

14. The DOI adopted the GKR's most recent management plan in 1993.

15. In 2010, the U.S. Fish & Wildlife Service (FWS) designated 62.8 miles of the UCF as critical habitat for bull trout, which is listed as threatened under the ESA. A portion of this stretch of the UCF abuts the GKR.

16. In furtherance of the GKR's purposes, the DOI diverts water from the West Side Ditch for "cultural" agricultural purposes—namely stock watering and flood irrigation—on 413 acres pursuant to a senior water right with an 1888 priority date.

17. The West Side Ditch is owned by the West Side Ditch Company. The DOI owns 16% of the shares of the West Side Ditch Company.

18. The West Side Ditch diverts water from the UCF in Deer Lodge, Montana and conveys irrigation water 13.6 miles from its headgate located near the Racetrack Interstate 90 interchange, north to the GKR.

19. In most years, the GKR and the other West Side Ditch users divert 50% or more of the entire flow of the UCF in mid-to-late summer. In drought years, GKR and the other West Side Ditch users divert upwards of 90% of the flow.

20. The DOI's diversions for the GKR, combined with anomalously warm summer temperatures, have caused extremely low streamflows on the UCF in nine out of the last 16 years.

21. In July and August 2015, average daily flows at the Deer Lodge USGS gage dropped below 100 cfs for 47 days. The recommended volume for the Deer Lodge gage is 180 cfs.

22. On August 4, 2016, flows measured 2.6 cfs in the UCF below West Side Ditch. 2021 drought conditions similarly dropped flows to single digits in reaches of the UCF.

23. Streamflow below 180 cfs at the Deer Lodge gage results in amplified

channel exposure, while flows below 90 cfs cause rapid degradation of aquatic habitat. Bull trout rely on minimum instream flows for their spawning, migration, and survival.

24. As such, the DOI's "cultural" agricultural watering at the GKR has effectively dewatered the UCF, resulting in not enough instream flow for the bull trout to survive. The extent of dewatering by the DOI's agricultural practices at the GKR has so adversely modified the bull trout's critical habitat that the species cannot survive in that portion of the UCF, much less spawn or migrate to headwaters streams.

25. Despite the impact of the DOI's watering practices on bull trout, the DOI has neither applied for nor been granted an incidental take permit.

26. Furthermore, neither the DOI nor the West Side Ditch Company have installed a fish screen on the West Side Ditch point of diversion, which has taken bull trout by entrainment. Neither the DOI nor the West Side Ditch Company have applied for or been granted an incidental take permit for this take of bull trout.

27. Finally, since the designation of the UCF abutting the GKR as critical habitat for bull trout in 2010, the DOI has not engaged in §7 consultation with FWS to determine the impacts of the GKR's 1993

management plan on bull trout critical habitat.

28. On March 7, 2022, Plaintiffs sent a 60-Day Notice of Intent to Sue under the ESA's citizen suit provision to the DOI and the West Side Ditch Company, alleging violations of the ESA. The letter notified the DOI that it had not engaged in consultation with FWS in violation of ESA §7, it had engaged in an unauthorized take of bull trout in violation of ESA §9, and it had failed to apply for and obtain an incidental take permit. The letter also notified West Side Ditch Company that it had failed to develop a habitat conservation plan and obtain an incidental take statement in violation of ESA §10.

## V. CLAIMS FOR RELIEF

### COUNT 1

**The failure of the DOI to consult with FWS on the impact of its management plan on bull trout critical habitat violates ESA §7.**

29. All previous paragraphs are incorporated by reference.

30. Bull trout were listed as threatened under the ESA in 1999. 64 Fed. Reg. 58910 (Nov. 1, 1999).

31. A 62.8-mile stretch of the UCF, part of which abuts the GKR, was listed as critical habitat for bull trout in 2010. 75 Fed. Reg. 63897, 63909 (Oct. 10, 2010).

32. ESA §7 requires an agency proposing an action to consult with an expert agency, in this case, FWS, to evaluate the consequences of a proposed action on a listed species. 16 U.S.C. § 1536(a)(2).

33. An "action" subject to consultation includes all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas. 50 C.F.R. §402.02. This regulatory language "admit[s] no limitations," as "there is little doubt that Congress intended to enact a broad definition of agency action in the ESA." *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1054 (9th Cir. 1994).

34. Among the types of actions that trigger ESA §7 consultation is the designation of critical habitat, even if an agency's resource management was adopted prior to the designation. *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1087-88 (9th Cir. 2015).

35. The DOI has not consulted with FWS on the impacts of the GKR's 1993 management plan on bull trout since the designation of the 62.8-mile stretch of UCF as critical habitat for bull trout.

36. Unless and until the DOI consults with FWS on the impacts of the GKR management plan on bull trout, the DOI is in violation of ESA §7.

## COUNT 2

### The DOI's and West Side Ditch Company's unpermitted take of bull trout violates ESA §9.

37. All previous paragraphs are incorporated by reference.

38. Pursuant to ESA §9, "it is unlawful for any person . . . to take any [listed] species within the United States." 16 U.S.C. § 1538(a)(1)(B).

39. The ESA states: "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C.§ 1532(19).

40. ESA regulations state: "Harass in the definition of 'take' in the Act means an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

41. ESA regulations state: "Harm in the definition of 'take' in the Act means an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3.

42. However, ESA §10 states: "The Secretary may permit . . . any taking otherwise prohibited by section 1538(a)(1)(B) of this title if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B).

43. Section 10 further clarifies: "In connection with any action alleging a violation of section 1538 of this title, any person claiming the benefit of any exemption or permit under this chapter shall have the burden of proving that the exemption or permit is applicable, has been granted, and was valid and in force at the time of the alleged violation." 16 U.S.C. § 1539(g).

44. If the offending party is a Federal agency, the permit for incidental take is usually issued as part of an "incidental take statement" under ESA § 7, which "(i) specifies the impact of such incidental taking on the species, (ii) specifies those reasonable and prudent measures that the Secretary considers necessary or appropriate to minimize such impact . . . and (iv) sets forth the terms and conditions (including, but not limited to, reporting requirements) that must be complied with by the Federal agency or applicant (if any), or both, to implement the measures specified under clauses (ii) and (iii)." 16 U.S.C. § 1536(b)(4).

45. The DOI's and West Side Ditch Company's refusal to install a fish screen on the West Side Ditch at the point of diversion from the UCF has taken bull trout by entrainment in violation of § 9 of the ESA.

46. Additionally, the DOI's "cultural" agricultural purposes have effectively dewatered the UCF, resulting in not enough instream flow for the bull trout to survive. The extent of dewatering by the DOI's agricultural practices at the GKR has so adversely modified the bull trout's critical habitat that the species cannot survive in that portion of the UCF, much less spawn or migrate to headwaters streams. Such adverse modification constitutes an illegal take under ESA §9.

47. Additionally, the West Side Ditch Company's diversions of water from the UCF have effectively dewatered the UCF, resulting in not enough instream flow for the bull trout to survive. This has so adversely modified the bull trout's critical habitat that the species cannot survive in that portion of the UCF, much less spawn or migrate to headwaters streams. Such adverse modification constitutes an illegal take under ESA §9.

48. Unless and until the DOI and the Westside Ditch Company receive a current valid incidental take permit from the FWS, their unpermitted take of bull trout violates ESA §9.

## COUNT 3

### The DOI's failure to obtain an incidental take permit for bull trout violates ESA §10.

49. All previous paragraphs are incorporated by reference.

50. The DOI neither applied for nor was granted an incidental take permit before or after it began engaging in the above-described takes of bull trout.

51. Until and unless the DOI receives a current valid incidental take permit from the FWS, the DOI is in violation of §10 of the ESA.

## COUNT 4

### West Side Ditch Company's failure to obtain an incidental take permit for bull trout violates ESA §10.

52. All previous paragraphs are incorporated by reference.

53. The West Side Ditch Company has failed to install a fish screen on the West Side Ditch at the point of diversion on the UCF.

54. The West Side Ditch Company's failure to install a fish screen on the West Side Ditch point of diversion has taken bull trout by entrainment.

55. The West Side Ditch Company has not applied for or been granted an incidental take permit for this take of bull trout.

56. Until and unless the West Side Ditch Company receives a current valid incidental take permit from the FWS, the West Side Ditch Company is in violation of §10 of the ESA

## VI. RELIEF REQUESTED

For all of the above-stated reasons, Plaintiffs request that this Court award the following relief:

A. Declare that the DOI and West Side Ditch Company are violating the ESA;

B. Order the DOI to consult with FWS on the impacts of the GKR's management plan on bull trout critical habitat;

C. Order the DOI and West Side Ditch Company to obtain incidental take permits from FWS;

D. Order the DOI and West Side Ditch Company to immediately implement interim protective measures to protect bull trout until they receive incidental take permits;

E. Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees under ESA; and

F. Grant Plaintiffs any such further relief as may be just, proper, and equitable.

Respectfully submitted this 10th day of May, 2022.

/s/Timothy Bechtold
Bechtold Law Firm, PLLC

Attorney for Plaintiffs